(118 App. Div. 304)

### STANNARD v. ROBERT H. REID & CO.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. PLEADING—AMENDMENT TO CONFORM TO PROOF—EFFECT.

On the first trial of an action for breach of contract, the complaint was amended to conform to the proof by changing the date of the execution and delivery of the contract sued on, but no formal order was entered amending the complaint, and no amended complaint was ever served. *Held*, that plaintiff was entitled to the benefit of such amendment on a subsequent trial, though the amendment did not state that it had been allowed to conform the complaint to the proof, and was not limited as to its purpose.

2. RECEIVERS—SCOPE OF AUTHORITY.

Receivers being officers of the court are not agents of the party for whom they are appointed receivers, in the sense that they have authority to bind such party by any act or omission on their part.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 150.]

**3. SAME—CONTRACTS—ENFORCEMENT—PROCEEDINGS.**

Receivers are only liable on contracts made in their official capacity to the extent of the property in their hands, which liability must be enforced in the receivership proceedings.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 173–175.]

**4. CONTRACTS—EXECUTION—SIGNING—NOTICE.**

Where plaintiff let a subcontract for marble work to defendant corporation, and sent blank contracts providing for the execution of a bond to defendant for signature, and after defendant had signed the contract and submitted a bond which was thereafter accepted both parties assumed that the contract had been executed, it was immaterial that plaintiff did not notify defendant that it had also signed the contract.

**5. SAME—BREACH—RECEIVERSHIP PROCEEDINGS.**

After defendant corporation had entered into a subcontract to do certain work for plaintiff, R., one of defendant's stockholders, because of dissension in the management, was appointed receiver. The corporation was not insolvent, and the receivership proceedings were instituted to enable R. to get control of the corporation. Shortly thereafter he purchased the stock of the other stockholders, when he paid the corporation debts out of his personal estate, and the receivership proceedings were dismissed under an order directing a restoration to the company of all the property in the hands of the receiver, subject to existing liabilities. *Held*, that the receivership proceedings were no defense to the corporation's breach of such contract.

**6. INTEREST—DAMAGES—UNLIQUIDATED DAMAGES.**

In an action for breach of a building subcontract, plaintiff merely alleged generally that he had sustained damages, for which he demanded judgment, with interest. He proved that he relet the work shortly after the commencement of the action, but he did no show that defendant had any knowledge of the contract price, nor was there any allegation that the work had been relet nor claim for damages on the basis of the difference between the contract price and the cost which plaintiff had been compelled to pay under the new contract. Plaintiff proved without objection that the additional cost of the work was less than the damages claimed. *Held*, that plaintiff's damages were unliquidated, and that he was therefore not entitled to recover interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Interest, §§ 35–40.]

Ingraham, J., dissenting.

Appeal from Trial Term.

Action by Ambrose B. Stannard against Robert H. Reid & Co. From a judgment in favor of plaintiff and from an order denying defendant's motion for a new trial, it appeals. Modified and affirmed.

This action was brought to recover damages for an alleged breach of contract to do marble and terrazzo work in the United States post office and custom house at Elmira, N. Y. The issues have been tried three times. On the first trial the jury disagreed, and on the second the complaint was dismissed, but, upon appeal, this court reversed the judgment (114 App. Div. 135, 99 N. Y. Supp. 567), and granted a new trial, which resulted in the verdict in favor of the plaintiff, which is the basis of the judgment from which this appeal is taken.

The plaintiff alleges that on or about the 20th day of November, 1901, defendant entered into a contract with him, a copy of which is annexed to and made a part of the complaint, that defendant abandoned the contract, and plaintiff was obliged to employ another contractor to perform the same, to his damage in the sum of $3,500. It is stipulated that on the first trial the complaint was amended to conform to the proof by a formal amendment drafted and recited in the record, amending the second paragraph of the complaint by reciting it as it then stood, and adding an allegation that the contract was

executed and delivered on the 3d day of January, 1902, but no formal order was ever entered amending it, and no amended complaint was served. The amendment contains no reference to the fact that it was allowed to conform the complaint to the proof, and contains no limitation as to the purpose or effect of the amendment. Appellant contends that as the jury disagreed at that trial, the plaintiff could not have the benefit of that amendment at this trial. The answer admits the incorporation of the defendant, denies the other allegations of the complaint, and alleges. two separate defenses and a counterclaim. It alleges that on or about the 7th day of February, 1902, when the contract was wholly unexecuted, the court, on the application of a stockholder of the defendant in proceedings for its voluntary dissolution, which were not instituted by the defendant, appointed receivers of the defendant, and that by operation of law it became unable to and did not continue in business until the discharge of the said receivers on February 7, 1905; that plaintiff had due notice of all the said proceedings; that the receivers were authorized by the court to carry out all valid contracts of the corporation, and that they refused to carry out said contract on the ground that the same was not the contract of the corporation; that the plaintiff took no steps whatever for his own protection or that of the defendant, and that any damage he may have suffered was the result of his carelessness and neglect. The answer also sets forth that the contract, if executed, was executed without any authority or power in the person executing the same, and that the same never became operative as a contract, as it was never accepted, but rejected, by the plaintiff. The counterclaim asked that the contract, if executed, be canceled, annulled and surrendered to defendant. Plaintiff replied denying the material allegations of the counterclaim. The plaintiff had a contract with the United States government to build the post office and custom house building at Elmira, N. Y. This alleged subcontract with the defendant was for the interior marble and terrazzo work. Plaintiff was responsible to the government for the entire contract, and executed a bond to the government for the faithful performance of the entire work. He sublet various parts of the work to subcontractors, from whom he endeavored to procure bonds acceptable to the company which was his surety.

It appears that prior to November 20, 1901, negotiations were had between plaintiff and representatives of the defendant, principally with Robert H. Reid, its president, with reference to subletting the marble work; that samples were submitted and bids received by plaintiff from defendant, which resulted in the preparation by plaintiff of the contract in suit, which bears date November 20, 1901, and provides, among other things, that at the time of the execution and delivery defendant should cause to be executed and delivered to plaintiff "a bond with good and sufficient sureties in the sum of $5,000, conditioned upon the full, faithful and complete performance of this agreement." The contract price was specified as $10,000, and the contract contained a provision to the effect that defendant should make such preparation for performing the work as would enable him to complete the work within 60 days after notice to commence it. On said 20th day of November, 1901, the plaintiff inclosed the contract, in duplicate, with bond attached, in a letter which he addressed to the defendant, with the request to "please execute these papers and furnish samples of red marble as quickly as possible." Plaintiff received no reply to this letter, and on December 2d he wrote defendant, asking that the agreement and bond be executed and returned to him without delay, and, receiving no reply, he again wrote defendant to the same effect on December 26, 1901, saying in the latter letter: "My bond Co. on Elmira have called on me to show up my sub-bonds which are all in my hands except yours and * * *. Please have yours in to-morrow, Friday, if possible. You know that I consider there is no other necessity for asking bond of you." Thereafter plaintiff received the contract, with bond attached, executed by Brown & Sutton as sureties, inclosed in a letter from defendant dated January 3, 1902, which contained a request for another copy of the contract, on the ground that one of the duplicates sent by plaintiff had been lost. On January 9, 1902, plaintiff wrote the defendant as follows: "I am sorry we tried to run in your bond and Bickford, More & Co.'s with so much Brown and Sutton. My bond company compliment you by passing Bickford, More & Co.'s bond as O. K., but throw your bond back at me with request that Brown and Sutton justify be-

fore a notary in double the amount of their bond as required by law. They also call my attention to an error in the typewriting of the bond and the filling in of the county as 'Manhattan' instead of 'New York,' and request me to send them a copy of your agreement. I have, therefore, had prepared two new copies of the agreement, which please sign and have witnessed where marked, and execute a bond with somebody else on it. * * * Please return both copies to us as soon as possible, and oblige, very truly yours * * *." On the 10th day of January, 1902, defendant's secretary and treasurer wrote plaintiff, acknowledging the receipt of the letter and contents, and stating that the company would rectify the matter and return the bond with new names on it. Not having heard from defendant, on January 20 and January 29, 1902, plaintiff again wrote, asking for the return of the contract and bond signed; but received no reply to these letters.

During the negotiations one half of the capital stock of the defendant was owned by Thompson & Starrett, and the other half was owned by Robert H. Reid, who was the president of the company. Most of plaintiff's letters to defendant were addressed, "Dear Reid"; and nearly all of defendant's letters to plaintiff were signed in the name of the defendant by Reid. . It appears that dissensions arose between Thompson & Starrett and Reid, each seeking to control the management, which resulted in Reid's instituting proceedings for the voluntary dissolution of the corporation. On February 6, 1902, Reid presented a petition to the court, asking for the appointment of temporary receivers, and setting forth, among other things, that he was president of the company, and that Starrett & Thompson had threatened to ruin the corporation and to acquire it free and clear of his interest, and that they and others had conspired to that end, and, in furtherance of their conspiracy, had secretly and without notice to him held an unauthorized and fraudulent meeting of the other stockholders and elected said Thompson and Starrett and one Burke, who was not a stockholder, and then elected Burke president, and elected another not a stockholder treasurer, and instigated creditors to bring actions against the company which "had been in a prosperous condition," and instigated the landlord to institute summary proceedings to dispossess defendant, and at their instigation the usurping president had issued notes of the company to them, and "that all this has made the company insolvent, and, unless a receiver is appointed herein and an injunction issued, the assets of the corporation will be completely wiped out, under the scheme of fraud adopted by the said Thompson and Starrett." Annexed to the petition were schedules of the assets and liabilities of the company, also a list of uncompleted contracts, 18 in number, including the Elmira contract with plaintiff. The court on the 6th day of February, 1902, appointed said Reid and one Seeger temporary receivers of the company, with the usual powers of receivers, and restrained the creditors and stockholders from suing the defendant. The receivers qualified by filing a bond for $30,000, and all the assets and property of the company were thereafter turned over to them. On February 17, 1902, the receivers presented a petition to the court, duly verified, wherein they state "that in the opinion of your petitioners the value of all the assets and contracts will be more than enough to pay the creditors in full, provided the same be not sacrificed by the cessation of the plant * * *; that annexed hereto is a schedule of contracts which the said corporation now has for various kinds of work aggregating in amount $131,302.14; that as your petitioners have, from inquiries made by them, learned and now allege, the said contracts, taken together, are very valuable, and, if properly completed, should result in a profit to the company of at least $20,000, but, if not completed, the same will be a total loss, and, in addition to which, the corporation will be liable to the various persons who made such contracts for any deficiency in the carrying out of the contracts." Annexed to the petition is a schedule of 18 uncompleted contracts of the corporation, including that with plaintiff. An order was granted and entered on the 17th day of February, 1902, in accordance with the prayer of the petition, authorizing and empowering the receivers "to complete or dispose of all the contracts * * * of the corporation now incomplete, a schedule of which contracts is annexed to the petition." The order also authorized the receivers "to perform such other work as they may obtain." The receivers completed all of the 18 contracts, excepting that

with plaintiff, at a profit, and did work not included in the schedules, making new contracts and doing new jobs of various kinds.

It was conceded on the record that the receivers as such, after their appointment, confirmed the contract with the plaintiff and agreed to carry it out. Negotiations continued with respect to the bond, and finally plaintiff, in view of the fact that the receivers had been authorized to carry out the contract and had given a bond, waived it. No work was actually done, however, by the receivers or defendant in performance of the contract, but the receivers frequently promised to proceed with the work down to about the 1st of May, 1902, and the contract was amended by mutual consent. Shortly after the appointment of receivers—Thompson, of Thompson & Starrett, testifies "within a month," and Reid says, "The end of June or the beginning of July, 1902" —Reid became the owner of all of the stock of the company, by purchasing and paying for Thompson & Starrett's 250 shares. In the fall of 1902, after Reid became sole owner of the stock, plaintiff repeatedly urged defendant to prepare to do the work, and, receiving no reply, wrote defendant—he addressed all communications to defendant after as well as before the receivership—on October 13, 1902, saying: "I have therefore to state that the said working drawings and statement of your progress with the work must be in my hands this present week or I must by Monday, October 29th, serve upon you the five days' notice provided by my contract with the Dep't and your agreement with me, and take up the work for your account." On October 17, 1902, the receivers wrote the following letter to the plaintiff: "In reply to your letter of the 13th, we beg to state that we find that under the changed conditions from the time which the Elmira contract was taken and the present writing that it would not be right for us to proceed with this contract. While at the time the Robert H. Reid & Co. took this contract it may have been a good one, at the present writing it is not a desirable one. We, as receivers, are not allowed by the court to run unnecessary risks or continue any work that might not show a profit at the outset; hence our deciding not to continue this contract. We have, however, obtained prices from several out of town concerns, thinking that perhaps we might be able to dispose of this contract advantageously, and at the same time not occasion you any loss from a time as well as a financial standpoint. The best prices that we were able to obtain were * * *. We regret that we were not able to arrive at this decision sooner, but it took some time to get these different prices. * * * There is no reason why, if this contract is given out immediately, there should be any delay. * * *" On October 18, 1902, plaintiff addressed another letter to the company, giving the five days' notice, and, after the expiration of the five days' notice, requested the scale drawings and specifications, etc., which were in the possession of the receivers. On the individual petition of Reid, on notice to the receivers, to their surety, and to the Attorney General, but to no one else, the court on the 7th day of February, 1903, by order discharged the receivers and directed them to turn over the assets in their hands to the corporation, and canceled their official bonds, and vacated the injunction against actions by creditors. The order discharging the receivers also contained a clause as follows: "It is ordered that this proceeding be, and the same hereby is, discontinued, and the order to show cause made herein and filed February 7, 1902, why the said corporation should not be dissolved, be and the same is, discharged with like effect as if said proceeding had not been taken." The petition for the discharge of the receivers recited the facts concerning their appointment, and averred, among other things, that "the main ground for the commencement of this special proceeding was the inability of the two factions controlling the said corporation to agree, and that such inability and disagreement jeopardized the assets of the said corporation, and, for the purpose of meeting the demands of creditors, rendered the property upon a forced sale insufficient to meet the demands of such creditors; * * * that thereafter the hearing before the referee on the order to show cause herein proceeded, and during such proceeding, and in or about the month of June, 1902, your petitioner and the said Thompson & Starrett, the owners, together of all the stock of the corporation, compromised their differences with respect to the management of the corporation, and the said Thompson & Starrett sold out all their holdings in the stock of said corporation to your petitioner, who there-

upon succeeded to their interest and is now in control of the whole of the capital stock of the said corporation. *' * * Your petitioner further shows that all of the unsatisfied engagements at the time of the filing of the petition herein none now remain undisposed of, the receivers having completed or disposed of all the contracts or unsatisfied engagements upon which the said corporation was liable, and that during the period of said receivership your petitioner personally has acquired by payment and assignment all of the claims which creditors hold against said corporation at the time of the making of the show cause order herein, except * * * [claims secured by his personal notes, not yet due]; * * * that the assets of the said corporation at the present time, exclusive of the lease, which is a valid asset of the said corporation, amounts to more than $50,000 in value, and consists of a large amount of property, accounts, and contracts, while the total indebtedness not acquired by your petitioner and for which claims are made does not exceed the sum of $33,000, and that the said corporation is absolutely solvent, and your petitioner is assured that the said corporation will meet all claims as they become due hereafter; the balance of the claim amounting to upwards of $20,000 being held by your petitioner. Your petitioner further shows that the causes which led to the institution of these proceedings are now eliminated, and that there is no reason for the continuation of these proceedings. * * *" Reid also testified that "all the former creditors of the corporation were paid during the receivership period, not by the receivers, if that is what you mean. Their claims were not compromised. They were paid in full 100 cents on the dollar by me personally out of my personal funds. They were paid by me and the corporation afterwards paid me." Upon the discharge of the receivers, Reid resumed the presidency of the company, and held the office until March, 1905; but severed his relations with the company and ceased to be a stockholder early in July, 1906. After the discharge of the receivers, and on February 19, 1903, the plaintiff entered into an agreement with the J. Franklin Whitman Company, of Philadelphia, the lowest bidder, to do the work called for by the Elmira contract with defendant or the receivers, for the sum of $13,125, or $3,125 in excess of the price at which defendant or the receivers agreed to do the work. When plaintiff contracted with the Whitman Company, he did not know that the receivers had been discharged. The Whitman Company subsequently performed the contract, and was paid in full by plaintiff, who brings this action to recover $3,125 and interest from October 17, 1903, the difference between the price paid the Whitman Company and the price at which the defendant or the receivers agreed to perform the work, on the ground of breach of contract.

At the close of the case both parties moved for the direction of a verdict. The court announced its readiness to direct a verdict, whereupon the defendant withdrew its motion, and asked that the case be submitted to the jury. The jury rendered a verdict for the full amount of damages claimed by plaintiff, with interest from the date of the last payment to the Whitman Company. The defendant requested the court to charge, among other things, that unless the contract was made on or about the 20th day of November, 1901, the defendant was entitled to a verdict, and also that, "if the jury find that the alleged contract was not entered into before the appointment of the receivers, then their verdict must be for the defendant," which requests were declined and counsel for the defendant duly excepted.

The other material facts appear in the opinion.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Robert Goeller (Jacob H. Shaffer, on the brief), for appellant.
Lyman A. Spalding (Geo. S. Scofield, Jr., on the brief), for respondent.

LAUGHLIN, J. I am of the opinion that the plaintiff was entitled to the benefit of the formal amendment to the complaint made

on the first trial. It only related to the date that the contract became
of force. The contract bore date the day it was originally alleged to
have been made. The amendment changed that date from November
20, 1901, to January 3, 1902, the day the defendant mailed the con-
tract signed by it to the plaintiff. The court would doubtless have
directed the service of the pleading as amended had that been re-
quested.

The court, by declining to instruct the jury that there could be no
recovery unless the contract was made prior to the appointment of
the receivers, in effect permitted a recovery, even though the contract
was made by the receivers. The general rule is that receivers are of-
ficers of the court, deriving their authority under the law from the
court, and that they are not the agents of the party of whom they are
appointed receivers in the sense that they have authority to bind the
party by any act or omission on their part (Ahern v. Steele, 115 N. Y.
203, 232, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; Lot-
timer v. Lord, 4 E. D. Smith, 183, 191; Railroad Co. v. Soutter, 2
Wall. [U. S.] 510, 519, 17 L. Ed. 860; Union Bank v. Kansas City
Bank, 136 U. S. 223, 236, 10 Sup. Ct. 1013, 34 L. Ed. 341; Texas &
St. L. Ry. Co. v. Rust [C. C.] 17 Fed. 275, 282; Dow v. Memphis
& L. R. R. Co. [C. C.] 20 Fed. 260, 269; General Electric Co. v.
Whitney, 74 Fed. 664, 667, 20 C. C. A. 674; Smith on Receivers, par.
35; Alderson on Receivers, §§ 6, 301); and, with respect to contracts
made by them, the rule is that they only in their official capacity and
the property in their hands are liable, and that the liability should be
enforced in the receivership proceedings (N. Y. & W. U. Tel. Co. v.
Jewett, 115 N. Y. 166, 168, 21 N. E. 1036; Heath v. Missouri, K. &
T. R. R. Co., 83 Mo. 617). It is doubtful, therefore, whether the
corporation would be liable if the contract was made by the receivers,
unless under the order discharging the receivers, but the circum-
stances relating to this receivership are peculiar; and, in the view I
take of this case, it is unnecessary to decide that question. If the con-
tract were made by the receivers, there would also be difficulty in
view of the form of the pleading, and it may well be, even if the cor-
poration would be liable, that it should have been alleged that the re-
ceivers made the contract, and that the circumstances relating to the
receivership and to the discharge of the receivers should have been
alleged. I am of opinion that as matter of law the contract was made
by the defendant before the receivers were appointed, and that the
effect of the order discharging the receivers without requiring an ac-
counting by them, made upon the application of the sole stockholder
of the company, was to turn the property over to the corporation sub-
ject to all the liabilities, whether incurred by the corporation or by
the receivers, whom the court, by the order discharging the receivers,
apparently treated as the agents of the corporation, and that the cor-
poration, by accepting the property from the receivers and continuing
the business, acquiesced in this view, and became bound accordingly.

The material facts in the negotiations with respect to the contract
are contained in the statement of facts, and need not be restated.
Reid, who negotiated and signed the contract for the defendant, own-

ed half the capital stock, was president of the company and in charge of the management of its business, and, as to third parties dealing with the corporation, was presumably authorized to execute the contract. When the defendant received the draft of the contract in duplicate from the plaintiff, it understood that the plaintiff intended to award the contract to it, and, on signing the contract, it was entered upon the books of the defendant as a contract. It appears by the evidence that, upon the receipt of the contract thus signed by the defendant, the plaintiff signed it. It is immaterial that he did not notify the defendant that he had signed it, because it was assumed by both parties that the contract had been executed, and the only question left open was the approval of the bond which the defendant by signing the contract obligated itself to give. Nor does it appear that the parties were unable to agree with respect to the bond. The plaintiff did not reject the bond executed and tendered by the defendant. He retained it and produced it upon the trial. At the suggestion of his surety on the general contract with the government, he sought to obtain another bond, and the defendant manifested a willingness to furnish it. After the appointment of the receivers, in view of their having furnished a bond as receivers and having been authorized by the court to execute this contract, plaintiff waived any further bond. For aught that appears, the bond furnished by the defendant complied with its contract to furnish a bond with good and sufficient sureties; but, even though it did not, the contract had been made, and it was expressly therein provided that the defendant should furnish such a bond. If it did not do so, it would have been guilty of a breach of the contract which would have justified the plaintiff in reletting the work and holding it responsible for his damages; and, on the other hand, if the plaintiff rejected a bond that complied with the contract, he would have been guilty of a breach of the contract, and the defendant would have been entitled to recover the profits it would have made on the contract. It may be that an erroneous view indulged in by both parties that their negotiations constitute an agreement does not establish a contract between them (Nundy v. Matthews, 34 Hun, 74, 79), but the understanding on the part of both parties that a binding contract had been made, and steps taken by them thereunder with a view to the performance of the contract, are to be considered material evidence of great weight on the question. The validity of the contract was recognized in the petition for the appointment of the receivers, but Reid at that time was acting in his individual interest as a stockholder, and not as president of the corporation, and his declaration, not being in the line of duty, doubtless was not binding upon the company; and yet this receivership appears to have been merely a receivership in form brought about, not as represented to the court for the dissolution of the corporation, but to enable Reid to obtain control of the corporation, as is shown by the facts that Reid became the active receiver, and soon after his appointment negotiated the purchase of the other one-half of the capital stock of the company not owned by him, and stopped the proceedings before the referee, and finally, by his petition for a discharge of the receivers without an accounting,

in effect showed that the company had not been insolvent, and its solvency at that time is clearly established by the evidence. The proceedings before the referee with reference to proof of claims against the corporation, if begun, were not completed. Neither the referee nor the court passed upon claims against the company, nor did the court pass upon claims arising during the receivership nor require any accounting by the receivers. These matters were doubtless dispensed with, owing to the fact that Reid had become the sole stockholder of the company and desired to have the receivership terminated, and the property restored to the company, to enable him to continue the business. In these circumstances the proper construction of the provision of the order discontinuing the proceeding and discharging the receivers "with like effect as if said proceedings had not been taken" is that the property was restored to the corporation subject to all of the liabilities of the corporation and probably to all of the acts and proceedings of the receivers, and by accepting back the property and resuming the business, the corporation assumed the liabilities. If, therefore, it can be affirmed as matter of law that the contract was made prior to the receivership, and that the effect of the order discontinuing the proceedings and discharging the receivers was to restore the property to the company subject to existing liabilities, it would seem that the error of the court in declining to charge that, unless the contract was made before the appointment of the receivers there could be no recovery, was not prejudicial to the defendant.

This court on the former appeal (114 App. Div. 135, 99 N. Y. Supp. 567) expressed the view that whether the company would be liable on the contract if made by it prior to the appointment of the receivers would depend upon whether the receivership was necessitated by the insolvency of the company, in which event the view was expressed that it would not be liable, but that the company would be liable if the receivership was brought about by it with a view to avoiding its obligations. On the last trial the question as to whether the company was insolvent was submitted to the jury as a question of fact, under instructions as to the burden of proof in accordance with the decisions of this court on the former appeal. The verdict of the jury shows that they found that the company was not insolvent, and their determination is fairly sustained by the evidence.

The court instructed the jury as matter of law that, if plaintiff was entitled to recover, he was entitled to recover interest from the 17th day of October, 1903, the date of the last payment made by him to Whitman & Company, to whom he relet the work on defendant's failure to perform the contract. Counsel for the defendant duly excepted to this instruction. The evidence shows that plaintiff relet the work shortly prior to the commencement of the action, but it does not appear that the defendant was aware of the fact or had knowledge of the contract price; nor did the plaintiff in his complaint allege the fact that the work had been relet or claim damages on the basis of the difference between the contract price for which defendant agreed to perform the work, and the cost thereof which he agreed to pay under the new contract. He alleged generally that he sustained damages by

103 N.Y.S.—34

defendant's breach of the contract in the sum of $3,500, and demands judgment for that amount, together with interest thereon. Upon the trial he proved without objection that the additional cost of the work, instead of being $3,500, was $3,125; and this was not controverted. Under the instructions of the court the jury added to that amount the sum of $565.62 as interest. I am of opinion that this was error. The damages were not liquidated. It is true that there was a market price for the various items of material, but it cannot be said that there was a market price for the entire contract work, which involved the furnishing of material and the performance of labor. The plaintiff did not know even approximately what it would cost him to have the work done. He was obliged to receive bids, which differed in amount, and he selected the lowest, and did not even then assume to fix his damages on that basis or notify the defendant; nor did he recover the amount of damages which he alleged in the complaint.

The other points presented by the appellant have been examined, but do not require special consideration in the opinion.

It follows, therefore, that the judgment should be modified by deducting therefrom the sum of $565.62, together with interest thereon from the rendition of the verdict to the time of entry of judgment, and, as so modified, affirmed, without costs.

All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I dissent, as I do not think that there was a contract by which the defendant undertook to do the work, for a failure of which the plaintiff has recovered a judgment. The defendant's bid to do the work was accepted, and the plaintiff forwarded to defendant a contract to be executed. That contract contemplated the giving of a bond by the defendant which would be satisfactory to the plaintiff before the contract became operative. The defendant executed the contract and forwarded the same, with a bond, to the plaintiff, but the plaintiff refused to accept the bond prepared and forwarded to the defendant a new contract with a new bond to be executed by the defendant, and that bond was never executed; nor was the new contract ever executed. When the receivers were appointed, there being no binding contract in existence, the action of the receivers in obtaining authority to complete all the contracts made by the defendant cannot be considered as a formal execution of the new contract, nor do I understand from the record that the receivers ever formally executed. the new contract. They certainly never signed a new contract, or assumed to bind either themselves or the company to carry out the contract which had been executed by the defendant, but which had been rejected by the plaintiff. The acceptance by the company of the property transferred to it by the receivers when they were discharged was not assuming the obligation that the receivers had incurred as to executory contracts which had never been formally entered into, and upon which no work had been done or obligation incurred by the receivers.

The defendant asked the court to charge that the acts of the receivers were not the acts of the corporation; and that, if the jury found that the alleged contract was not entered into and accepted by both

parties before the appointment of the receivers, their verdict must be for the defendant.    The court refused these requests, and the defendant excepted.    I think this was error.    The complaint alleged the making of the contract by the corporation, a copy of which was annexed to the complaint.    There was no allegation in the complaint that a contract had been made with the receivers which had been assumed by the corporation.    The only contract alleged in the complaint, therefore, was that made by the defendant corporation, and, if no enforceable contract was made by the defendant corporation upon this complaint, I do not think that the action could be sustained.    Any ratification or agreement made by the receivers could not be the basis of an action for damages for a breach of a contract alleged to have been made, not by the receivers, but by the corporation before the appointment of the receivers; and, in view of the form of the action, I think the defendant was entitled to have the jury instructed that the plaintiff could not recover, unless he proved a binding contract with the corporation.

I think the judgment should be reversed.